# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD KEPHART and DIANE KEPHART, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 2:12-668 |
| v. | ) ) | JUDGE KIM R. GIBSON |
| ABB, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF COURT

## I.    SYNOPSIS

Pending before the Court are four motions:  (1) Plaintiffs' motion to compel discovery (ECF No. 44); (2) Defendant's motion to compel Plaintiffs' responses to lien interrogatories and requests for production of documents (ECF No. 49); (3) Defendant's motion to compel vocational examination of Howard Kephart (ECF No. 54); and (4) Defendant's motion for leave to join third-party defendants (ECF No. 72).

The parties have filed numerous briefs and exhibits related to each of the pending motions.  The Court heard oral argument regarding the three discovery motions on January 10, 2014.  All of the motions are now ripe for adjudication, and the Court will address each motion under a separate heading below.

For the reasons that follow, the Court will **GRANT** Plaintiffs' motion to compel discovery (ECF No. 44); **GRANT** Defendant's motion to compel Plaintiffs' responses (ECF No. 49); **GRANT** Defendant's motion to compel vocational examination (ECF No. 54); and **GRANT** Defendant's motion for leave to join third-party defendants (ECF No. 72).

## II.     JURISDICTION AND VENUE

The Court has diversity jurisdiction in this removal action pursuant to 28 U.S.C. §§ 1332(a) and 1441.  Venue is proper under 28 U.S.C. § 1391(b)(2).

## III.    BACKGROUND

This case arises from personal injuries sustained by Howard Kephart when a boiler exploded at the State Correctional Institute at Houtzdale ("SCI Houtzdale") where he worked as a utility plant operator.  (ECF No. 57, Am. Compl. ¶ 7, 17).

Plaintiffs allege the following facts in their amended complaint.  In 1995, a boiler system was installed at SCI Houtzdale.  (Id. ¶ 8).  This system included a Bailey Control Programmable Logic Controller System ("PLC control system"), which provided automated control of the boilers.  (Id. ¶ 8).  The PLC control system was designed to display an error code in the event of a system error so that the boiler could be shut down and repaired.  (Id. ¶¶ 9-10).

On December 30, 2009, the PLC control system displayed an error code.  (Id. ¶ 11).  Workers then shut down Boiler # 1, and a mechanic attempted to repair it.  (Id. ¶¶ 11-16).  When workers tried to relight Boiler # 1, it exploded, causing injuries to Howard Kephart.  (Id. ¶ 17).  Plaintiffs allege that the cause of the explosion was a "defect in the design and/or operation of the PLC Control System."  (Id. ¶¶ 18-20).  The complaint further alleges that Bailey Controls, Inc. designed and manufactured the PLC control system, and that ABB, Inc. is liable as the successor to Bailey Controls, Inc.  (Id. ¶¶ 3-4).

Plaintiffs initiated this action by filing a complaint in the Court of Common Pleas of Allegheny County.  After filing an answer, Defendant removed the matter to this Court.  On December 30, 2013, Plaintiffs filed an amended complaint (ECF No. 57), which contains three counts:  Count One alleges a strict liability claim; Count Two alleges a negligence claim; and Count Three alleges a loss of consortium claim.  Defendant filed an answer to the amended complaint on January 21, 2014.  (ECF No. 65).

On July 6, 2012, this Court held an Initial Rule 16 Conference and entered an initial scheduling order (ECF No. 15).  The scheduling order set forth the deadlines for discovery, including a fact discovery deadline of April 30, 2013, and an expert discovery deadline of July 31, 2013.  (Id. at ¶¶ 6, 7).  However, discovery in this matter has progressed much slower than expected.  Upon the parties' numerous motions, the Court has extended discovery and amended the scheduling order several times.  (See ECF Nos. 19, 26, 29, 43, 71).  The Court's most recent amended scheduling order, dated January 31, 2014, set a new fact discovery deadline for April 30, 2014, and a new expert discovery deadline for July 30, 2014.  (ECF No. 71).

Contributing to the protracted discovery period have been the parties' various discovery disputes and requests to amend the pleadings.  Against this backdrop, the Court will separately evaluate the four pending motions.

IV.     PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY

Plaintiffs have filed a motion to compel discovery (ECF No. 44) under Rule 37(a)(1), seeking to compel production of a number of documents generated between

February 3, 2010, and March 16, 2011. Defendant claims the documents are privileged.[1]

The parties have established the following relevant background. (*See generally* ECF Nos. 44, 47).

The boiler explosion at SCI Houtzdale that allegedly caused Mr. Kephart's injuries occurred on December 30, 2009. On February 3, 2010, the insurance company for SCI Houtzdale notified Defendant that it was contemplating a subrogation claim against Bailey Controls, to which Defendant was the successor. (*See* ECF No. 48-1, at 17-19). The notice also explained that Defendant should immediately conduct an inspection because the site was scheduled for "clean up and demolition." (*Id.*). On March 4, 2010, Defendant sent a service technician, Joseph R. Lauck ("Lauck"), to SCI Houtzdale to conduct a post-explosion site inspection. Lauck visually inspected the explosion site, interviewed various prison personnel, photographed the explosion site and relevant equipment, collected pertinent documents, and prepared a written report. (*See* Service Report, ECF No. 48-1, at 21-22). Defendant has produced to Plaintiffs the photographs, documents, and report drafted by Lauck resulting from his investigation.

Sometime after Lauck's inspection, but before Plaintiffs initiated their lawsuit, the prison remediated the explosion site. Plaintiffs assert that they are unable to conduct an investigation of the explosion site due to this remediation and rebuilding of the boiler.

---

[1] Defendant originally identified 93 documents in their abridged privilege log for which they were asserting a privilege. (*See* ECF No. 47-2, at 2-11). However, Defendant has revised that number, noting that some of the documents in the abridged privilege log were duplicative and some of the documents had already been produced. (*See* ECF No. 70). Accordingly, the number of disputed documents is much less than the initial 93 documents.

Thus, Plaintiffs argue that Defendant should produce, among other things, any documents containing factual findings from its post-explosion inspection.

After filing their complaint, Plaintiffs served Defendant with a request for production of documents in July 2012. (*See* ECF No. 31). Defendant responded in January 2013, objecting to the production of certain documents based on the attorney-client and work-product privileges. (*See* ECF No. 32). Thereafter, Plaintiffs filed their first motion to compel production of documents (ECF No. 27). The Court ordered Defendant to either produce the requested documents or provide a privilege log enumerating the documents for which Defendant asserts a privilege. (ECF No. 35). Pursuant to the Court's order, Defendant served a supplemental response to Plaintiffs' request for production and provided a privilege log on August 26, 2013. Defendant later supplemented its response with a consolidated privilege log on October 17, 2013.

On November 21, 2013, Plaintiffs filed a second motion to compel discovery (ECF No. 44) along with a brief in support (ECF No. 45), claiming Defendant's asserted privileges do not apply to the requested documents. Defendant filed a response to Plaintiffs' motion (ECF No. 47) and a brief in support (ECF No. 48). After reviewing the parties' briefs and hearing argument on the matter, the Court ordered Defendant to submit the disputed documents for an *in camera* review. Defendant provided the relevant documents to the Court in electronic format on January 30, 2014. Defendant also filed an abridged privilege log that contains only the documents at issue in the instant motion.[2]

---

[2] For the sake of clarity, the Court will only refer to the documents contained in the abridged privilege log, which is docketed at ECF No. 47-2, at 2-11.

## A.    Legal Standard

Generally, materials that are relevant to an issue in a case are discoverable unless they are privileged.  Rule 26 explains the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  While the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed."  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Indeed, Rule 26(b)(1) imposes "two content-based limitations upon the scope of discovery:  privilege and relevance."  *Trask v. Olin Corp.*, No. 12-cv-340, 2014 WL 836154, * 13 (W.D. Pa. Mar. 4, 2014).

Even relevant discovery may be limited by a court "if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues."  *Id.* (citing Fed. R. Civ. P. 26(b)(2)(C)).  "In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the circumstances of the pending action."  *Trask*, 2014 WL 836154, at * 14.  Here, Defendant has asserted both the work-product and attorney-client privilege over certain documents.

*Work-Product Doctrine*

The work-product doctrine is governed by federal law, even in diversity cases. *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 244 (W.D. Pa. 2007). In *Hickman v. Taylor*, the Supreme Court examined the work-product doctrine and adopted "the general policy against invading the privacy of an attorney's course of preparation." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine recognizes the reality that attorneys must often "rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Id.* Thus, the doctrine also protects materials prepared by an attorney's agent. *Serrano v. Chesapeake Appalachia, LLC*, No. 2:12-cv-1678, 2014 WL 896634, at * 3 (W.D. Pa. Mar. 6, 2014).

Rule 26(b)(3) sets forth the work-product doctrine, which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A). However, those materials may be discovered if (1) they are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

A document is considered to be prepared "in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir. 1979). Work product is discoverable only if the moving party makes a showing of substantial need and undue hardship. *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 318 (E.D. Pa. 1995).

*Attorney-Client Privilege*

The attorney-client privilege is one of the oldest privileges for confidential communications known to the law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.; Nesselrotte v. Allegheny Energy, Inc.*, 242 F.R.D. 338, 340 (W.D. Pa. 2007).

Under Rule 501 of the Federal Rules of Evidence, a district court exercising diversity jurisdiction applies the law of privilege from the state in which it sits. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978). Pennsylvania defines the attorney-client privilege by statute:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. Cons. Stat. Ann. § 5928; *see also Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 284 (E.D. Pa. 2002).

The Third Circuit has explained the required elements to establish the attorney-client privilege under Pennsylvania law as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999) (quoting *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir.1994)).

Under both the attorney-client privilege and the work-product doctrine, the party asserting the privilege and resisting discovery—here, the Defendant—bears the burden of demonstrating that the privilege acts as a bar to discovery. *Robinson v. Countrywide Home Loans, Inc.*, No. 08-cv-1563, 2010 WL 4737816, at * 1 (W.D. Pa. Nov. 16, 2010).

## B.    Discussion

Plaintiffs seek to compel the production of numerous documents related to their claims. Plaintiffs contend that, because they did not have the opportunity to conduct an independent investigation of the accident site, they should be permitted to discover any "factual findings from Defendant's investigation of the accident site and boiler" as they are the "only available information of its kind in this case." (ECF No. 44 ¶ 4). Specifically, Plaintiffs seek production of documents containing factual findings that were generated by the Defendant between February 3, 2010, and March 16, 2011.

Defendant opposes Plaintiff's motion, claiming the documents are protected by either the work-product doctrine or the attorney-client privilege, or both. Defendant notes that it has already produced to Plaintiffs a copy of the Lauck report, photographs taken by Lauck, and certain configuration files collected from the prison. (ECF No. 47 ¶ 3). Additionally, Defendant contends that various components of the boiler system, including the valve packages on the fuel rack and the boiler control panel are still in use at the prison or were preserved and available for inspection. (*Id.*). Defendant asserts that Plaintiffs have failed to show they cannot obtain factual findings form any other source, explaining that Plaintiffs could depose ABB employees and prison personnel, subpoena the prison's property insurance carrier, and serve interrogatories. (*Id.*). Thus, Defendant argues, Plaintiffs have failed to meet the required showing of undue hardship and substantial need.

As explained above, Defendant initially identified 93 privileged documents, but has since reduced that number due to duplication in the privilege log and production of some of the documents to Plaintiffs. Defendant has divided the documents into two categories—"drawings" and "documents." The Court will separately address each.

### 1.    Drawings

Defendant has asserted privilege under the work-product doctrine over a set of drawings that Defendant identifies in the abridged privilege log collectively as document number 84. Document number 84 is comprised of 10 separate drawings, with each drawing consisting of between 3 and 14 pages. Defendant has submitted the drawings for

review by the Court in pdf format and has paginated the drawings as *in camera* page numbers 160 through 212. The drawings are schematic diagrams representing various components or systems related to the boiler system at issue in this case.[3] Joseph R. Lauck, a service technician employed by Defendant who conducted the post-explosion inspection at the prison, created the drawings, which are dated August 3, 2011.

Defendant contends that the drawings are work product created in anticipation of litigation and are therefore privileged. Defendant also asserts that it has already produced photographs, the inspection report, and configuration files, and that Plaintiffs can depose various individuals to gather further information.

Plaintiffs assert that, like the photographs and other documents collected by Lauck during his inspection, the drawings are "facts" and are discoverable. Plaintiffs also argue that, if the work-product doctrine applies, Plaintiffs have demonstrated a substantial need for the drawings because they cannot conduct an independent inspection and cannot obtain their substantial equivalent without undue hardship. The Court agrees.

First, there does not appear to be any meaningful difference in terms of work product between (1) the photographs and the report from the Lauck inspection and (2) the drawings. The drawings, like the photographs and the report, are factual findings adduced during an inspection of the explosion site at the prison. Second, even if Defendant had established that the drawings were work product created in anticipation of litigation, Plaintiffs have demonstrated the substantial need for access to these

_____

[3] Mr. Lauck described the drawings as "pictorial representations of the configuration file from the CSC controllers at the Prison." (Affidavit of Joseph R. Lauck, ¶ 11).

drawings given the fact that they did not have the opportunity to conduct an independent investigation of the boiler system and the explosion site.

Accordingly, Defendant must produce the drawings, identified in the privilege log as document number 84.

### 2. Documents

The Court has reviewed the documents submitted in pdf format as *in camera* numbers 1 through 159. Inasmuch as the documents contain information regarding the factual investigation of the accident site, the Court finds such documents are discoverable for the same reasons stated above. At oral argument on the motion, Plaintiffs explained that they did not intend to compel documents containing the opinions and impressions of Defendant's attorneys, but wished to gather only those documents containing factual summations and observations related to the boiler system and the explosion, due to Plaintiffs' inability to conduct its own inspection. As such, Defendant must produce only those documents that contain factual details, and may redact from those documents any mental impressions, conclusions, opinions, or legal theories in accordance with Rule 26(b)(3)(A)(i) and (ii).

### C. Conclusion

For these reasons, the Court will **GRANT** Plaintiffs' second motion to compel discovery (ECF No. 44).

## V. DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' RESPONSES

On September 24, 2013, Defendant served Plaintiffs with (1) lien interrogatories (ECF No. 49-1) and (2) a request for production of documents (ECF No. 49-2). After Plaintiffs failed to respond to these discovery requests, Defendant filed a motion to compel. (ECF No. 49). Plaintiffs filed a brief in opposition to the motion (ECF No. 51), after which Defendant filed a brief in reply (ECF No. 59).

### A. Legal Standard

The Court has summarized the general law governing discovery disputes in the section above. Additionally, Rule 34(b) provides that a party must respond in writing within 30 days after being served with a discovery request. Fed. R. Civ. P. 34(b)(2)(A); *see also Nowell v. Reilly*, 437 F. App'x 122, 125 (3d Cir. 2011). If a party fails to answer interrogatories under Rule 33 or fails to produce documents under Rule 34, the aggrieved party may petition the court under Rule 37 for an order compelling a response.

### B. Discussion

Plaintiffs advance three reasons why they should not be compelled to respond to Defendant's discovery requests. Plaintiffs assert (1) Defendant's interrogatories exceed the number permitted under Rule 33(a)(1); (2) Defendant is already in possession of all responsive documents in Plaintiffs' possession; and (3) Defendant is "fully informed of the only lien of which Plaintiffs are aware—the workers' compensation lien." (ECF No. 53 at 2). Plaintiffs' arguments are all without merit.

First, while it is true that Defendant's lien interrogatories exceed the number generally permitted under the Federal Rules of Civil Procedure, the parties expressly waived the discovery limitations set forth in the Rules. In their Rule 26(f) report, the parties agreed to the following:

> The parties stipulate and agree pursuant to Fed. R. Civ. P. 29 to waive all restrictions on the number of written discovery requests and depositions and upon the duration of depositions, set forth in the Federal Rules of Civil Procedure and/or the Local Rules of Civil Procedure of the United States District Court for the Western District of Pennsylvania.

(ECF No. 11, ¶ 10). In accordance with this stipulation, the Court noted in its Initial Scheduling Order, "The following limits on the scope of discovery shall apply: **None, and the parties have waived restrictions pursuant to Fed. R. Civ. P. 29.**" (ECF No. 15 ¶ (A)(5)) (emphasis in original). Accordingly, Plaintiffs' first argument is without merit.

Second, even if Plaintiffs' contention that Defendant is in possession of all responsive documents is correct, Plaintiffs still must formally respond to the discovery requests. Defendant cannot determine whether it has "all responsive documents" in its possession unless Plaintiffs advise Defendant of that fact. Plaintiffs need not produce the documents that they have already produced. But Plaintiffs cannot simply ignore discovery requests because they believe the Defendant is in possession of the requested information. Plaintiffs may respond that they have produced all responsive documents— but they must respond. Accordingly, Plaintiffs' second argument is without merit.

Third, Plaintiffs cannot refuse to answer interrogatories and produce documents related to any liens in this case on the ground that they believe Defendant is "fully informed of the only lien of which Plaintiffs are aware." As stated above, Plaintiffs still

must formally respond to Defendant's requests, even if they simply assert that the requested documents have already been produced. Plaintiffs cannot ignore Defendant's discovery requests.

Furthermore, Defendant's requests for lien information are relevant to the claims asserted in this case. Indeed, Plaintiffs concede, "recoverable liens are an important part of fairly evaluating a lawsuit." (ECF No. 53, at 3). Given the allegations in the complaint concerning Mr. Kephart's wage loss claims and given the fact that Mr. Kephart is receiving social security and filed a worker's compensation claim, Defendant's investigation into lien issues is proper. Likewise, Plaintiffs' counsel indicated that there might be a lien asserted under the Heart Lung Act. (*Id.* at 2, FN 1). Thus, Defendant should be permitted to conduct full discovery on the lien issue. *See Trask v. Olin Corp.*, No. 12-cv-340, 2014 WL 836154, at * 19-23 (W.D. Pa. Mar. 4, 2014). Accordingly, Plaintiffs' third argument is without merit.

### C.    Conclusion

For these reasons, the Court will **GRANT** Defendant's motion to compel Plaintiffs' responses to lien interrogatories and requests for production of documents (ECF No. 49).

## VI.    DEFENDANT'S MOTION TO COMPEL VOCATIONAL EXAMINATION

Plaintiffs' amended complaint alleges that Mr. Kephart sustained permanent injury and disability, resulting in damages that include lost wages and loss of earning capacity. (ECF No. 57, Am. Compl. ¶ 23(b)). Believing it necessary to evaluate Mr. Kephart's physical condition related to these claims, Defendant scheduled Mr. Kephart

for a vocational examination on June 25, 2013, providing Plaintiffs' counsel with a notice of the examination on June 10, 2013. (ECF No. 54 ¶¶ 8-9). On June 19, 2013, Plaintiffs' counsel cancelled the scheduled vocational examination and has refused all of Defendant's subsequent requests for an examination. (ECF No. 54 ¶¶ 10-19).

On December 30, 2013, Defendant filed a motion to compel vocational examination of Howard Kephart (ECF No. 54), to which Plaintiffs filed a response in opposition on January 10, 2014 (ECF No. 61). Defendant filed a reply brief on January 27, 2014. (ECF No. 66, at 5-28).

### A.     Legal Standard

Rule 35(a) of the Federal Rules of Civil Procedure provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). However, the court may order the examination "only on motion for good cause." *Id*.; *see also Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964) (discussing the good cause requirement of Rule 35).

A vocational examination "is within the spirit and letter of the rule as currently written." *Jefferys v. LRP Publications, Inc.*, 184 F.R.D. 262, 263 (E.D. Pa. 1999). "[B]efore an order for a vocational examination can be entered, there must be a showing that Plaintiff's qualifications for employment are in controversy and that there [is] good cause for an examination." *Douris v. Cnty. of Bucks*, No. 99-cv-3357, 2000 WL 1358481, at * 3 (E.D. Pa. Sept. 21, 2000).

### B.    Discussion

The parties do not dispute that Mr. Kephart's mental or physical condition is in controversy.  Mr. Kephart has asserted permanent physical injuries, thus his physical condition is unquestionably in controversy.  Mr. Kephart has also asserted lost wages and loss of earning capacity because of his physical injuries, thus placing his vocational condition in controversy.[4]  *See Douris*, 2000 WL 1358481, at * 2-3.  Likewise, Plaintiffs do not appear to contest the qualifications of Mr. Primm, the selected examiner, as a "suitably licensed or certified examiner" under Rule 35.

Instead, Plaintiffs challenge whether Defendant's demand for a vocational examination satisfies the good cause requirement in Rule 35.  Plaintiffs argue that the vocational examination is unnecessary because Mr. Kephart already underwent an independent medical examination ("IME") and Defendant's counsel already deposed Mr. Kephart.  According to Plaintiffs, any further examination would be "irrelevant and repetitious."  (ECF No. 61, at 2).

Courts have recognized that, where a plaintiff places his employment abilities in controversy, medical examinations or medical records may not be sufficient, and that a defendant might be prejudiced if not permitted to conduct its own vocational examination of the plaintiff.  *See, e.g., Douris v. Cnty. of Bucks*, No. 99-cv-3357, 2000 WL 1358481, * 3 (E.D. Pa. Sept. 21, 2000) (requiring plaintiff to submit to a medical examination and a separate vocational examination).  Likewise, courts have noted that reports prepared by a

---

[4] Plaintiffs have alleged, "[Mr. Kephart] is now disabled and unable to return to work." (ECF No. 54-4, at 18).

plaintiff's experts, a defendant's deposition of a plaintiff, and a plaintiff's answers to interrogatories do not preclude the defendant from conducting a vocational examination of the plaintiff, as long as the defendant can shown good cause. *See, e.g., Carotenuto v. Emerson Elec. Co.*, No. 89-cv-6298, 1991 WL 111258, at * 1 (E.D. Pa. June 19, 1991). These courts have also explained that a vocational examination is different from a standard medical examination. Thus, the vocational examination is not a "repeat examination" as alleged by Plaintiffs (ECF No. 61, at 3), but is a separate examination that provides information about Plaintiff's vocational capabilities. Therefore, Plaintiffs' argument that the vocational examination violates Rule 26(b)(2) as unreasonably cumulative or duplicative is without merit.

Here, good cause exists for the proposed vocational examination. Plaintiffs have asserted that Mr. Kephart's injuries prevent him from working, a fact which Defendant disputes. Thus, Defendant should have the opportunity to evaluate Mr. Kephart's vocational capacities, opportunities, and limitations, to determine whether Mr. Kephart can return to the workforce in some useful capacity. *See Massey v. Manitowoc Co., Inc.*, 101 F.R.D. 304, 307 (E.D. Pa. 1983).[5]

### C.     Conclusion

For these reasons, the Court will **GRANT** Defendant's motion to compel vocational examination (ECF No. 54).

---

[5] The Court finds Plaintiffs' cited authority—namely, district court cases outside of the Third Circuit holding a minority view—easily distinguishable, and further finds that the cases in this Circuit uniformly agree with the Court's conclusion in this case.

## VII.    DEFENDANT'S MOTION TO JOIN THIRD-PARTY DEFENDANTS

Defendant filed a motion for leave to join third-party defendants (ECF No. 72) on February 27, 2014, along with a brief in support (ECF No. 73).  Plaintiff filed a response in opposition (ECF No. 74) on March 6, 2014, after which the parties each filed an additional brief in reply (ECF Nos. 77, 82) with leave from the Court.

In its motion, Defendant seeks leave to join The Babcock & Wilcox Company, Babcock & Wilcox Investment Company, and Babcock & Wilcox Power Generation Group, Inc. (collectively "B&W") as third-party defendants.  (ECF No. 72-1, at 1).

### A.    Legal Standard

Federal Rule of Civil Procedure 14(a)(1) provides:

A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

"The purpose of Rule 14(a) is to avoid 'circuity of action' and to settle related matters in one litigation."  *Saunders v. Jim Emes Petroleum Co., Inc.*, 101 F.R.D. 405, 407 (W.D. Pa. 1983) (citing *Tiesler v. Martin Paint Stores, Inc.*, 76 F.R.D. 640, 642 (E.D. Pa.1977)). Joinder of a third-party defendant under Rule 14, however, is not automatic, and the decision to permit joinder rests with the sound discretion of the court.  *Feinaugle v. Pittsburgh & Lake Erie R. Co.*, 595 F. Supp. 316, 317 (W.D. Pa. 1983).  Generally, a court should permit impleader unless "it will delay or disadvantage the existing action and the third-party claim obviously lacks merit."  *Wilson v. Beekman*, 198 F. App'x 239, 241 (3d Cir.

2006) (citation omitted). Indeed, Rule 14 is to be liberally interpreted to allow the disposition of all claims arising out of a single occurrence or transaction. *Gebhardt v. Edgar*, 251 F. Supp. 678, 680 (W.D. Pa. 1966).

In ruling on a motion to join third-party defendants, the court is bound by the allegations in the pleadings. *National Fire Insurance Co. of Hartford v. Daniel J. Keating Co.*, 35 F.R.D. 137, 139 (W.D. Pa.1964). Joinder of a third-party defendant is permitted where the defendant can show that, if he is found liable to the plaintiff, the third party will be liable to him. *Feinaugle*, 595 F. Supp. at 317-18; *United States v. Costa*, 11 F.R.D. 492, 495 (W.D. Pa. 1951).

In determining whether joinder of a third-party defendant is proper under Rule 14, courts have considered several factors, including: (1) the timeliness of the motion; (2) whether joinder will introduce an unrelated controversy; (3) the potential for complication of issues at trial; (4) whether the third-party complaint would avoid multiple litigation and settle related matters in one suit; (5) whether the evidence, witnesses, and legal issues will be substantially the same in the defendant's third-party action and plaintiff's action; (6) the likelihood and extent of delay in the trial; (7) the merit of the third-party complaint (i.e. whether the joinder would foster an obviously unmeritorious claim); and (8) the possible prejudice to the plaintiff. *See O'Mara Enters., Inc. v. Mellon Bank, N.A.*, 101 F.R.D. 668, 670 (W.D. Pa.1983); *Saunders v. Jim Emes Petroleum Co., Inc.*, 101 F.R.D. 405, 407 (W.D. Pa. 1983); *Scobie v. Waco Equip. Co.*, No. 03-cv-1224, 2008 WL 1943551 (W.D. Pa. May 1, 2008); *Scott v. Walter Kidde Portable Equip., Inc.*, No. 02-cv-1460, 2002 WL 1880521 (E.D. Pa.

Aug. 12, 2002); *Figueroa v. United States*, No. 10-cv-7340, 2012 WL 1449211 (E.D. Pa. Apr. 26, 2012).

**B.**     **Discussion**

In its motion, Defendant seeks to join B&W as third-party defendants.  According to Defendant, B&W designed, developed, and implemented the system and controls for the boiler system, and not Bailey Controls or ABB.  (ECF No. 72-3, at 5).  Thus, Defendant argues, it should be permitted to implead B&W as a contributor.

Plaintiffs oppose the motion.  Specifically, Plaintiffs argue that the third-party complaint would create a substantial need for additional discovery as to the B&W Defendants, even though most of the depositions in this matter are already completed, and discovery has already been extended multiple times.  (ECF No. 74, at 2).  Plaintiffs also assert that the motion is untimely because Defendant should have known about B&W's involvement in the underlying issues in this case as early as 2010, well before Plaintiffs even filed their initial complaint.  (*Id.* at 2).

The Court will separately address the relevant factors from the test listed above.

*Timeliness of the motion*

Plaintiffs assert that Defendant's motion is untimely.  According to Plaintiffs, ABB "has long known of [B&W's] potential as a contributor/indemnitor and their failure to add [B&W] at an earlier stage is inexcusable."  (ECF No. 74, at 2).  Plaintiffs assert that the untimeliness of the motion is prejudicial both to Plaintiffs and to B&W because depositions will need to be redone and substantial discovery would be necessary.  (*Id.*).

The Court disagrees. While this case is almost two years old, the Plaintiffs only recently filed an amended complaint, discovery is still ongoing, and the case remains in a relatively early stage of litigation. Importantly, Defendant asserts that its third-party complaint against B&W is necessary because of the new factual allegations asserted in Plaintiffs' recent amended complaint. (ECF No. 72-3, at 9). Accordingly, the motion is not untimely.

### *Delay of trial*

Defendant concedes that, if the Court grants the motion for leave to join B&W, the trial in this matter might be delayed. Nevertheless, the extent of the delay would be slight. The parties are still in the process of conducting discovery. Plaintiffs' amended complaint and Defendant's amended answer were only recently filed. Thus, trial is not imminent in this case. Furthermore, the issues raised in Defendant's proposed third-party complaint are nearly identical to the issues being litigated between the current parties. Accordingly, any delay at this stage in the litigation would likely be minimal.

### *Potential for complication of issues at trial*

Permitting Defendant's request to implead B&W would not complicate the issues at trial. The third-party complaint alleges that B&W was negligent and strictly liable for defectively designing, developing, implementing, maintaining, inspecting, and repairing the boiler control system components responsible for the alleged malfunction that caused Mr. Kephart's injuries. B&W's role in designing, developing, implementing, maintaining, inspecting, and repairing the various components of the boiler system is directly related to the key issues in this case—namely, who is at fault in causing Mr. Kephart's injuries.

Plaintiffs have presented no argument on this factor, and the Court finds that the third-party complaint would not complicate the issues at trial in this matter.

Indeed, permitting ABB to file the third-party complaint would avoid multiple litigation and settle related matters in one suit, which is the primary purpose behind Rule 14. *See O'Mara Enterprises, Inc. v. Mellon Bank, N.A.*, 101 F.R.D. 668, 671 (W.D. Pa. 1983). Likewise, the evidence, witnesses, and legal issues will be substantially the same in the defendant's third-party action and plaintiff's action.

### *Possible Prejudice to Plaintiff*

Plaintiffs contend that they will be prejudiced if Defendant is permitted to join B&W because Defendant could have joined B&W immediately after the original complaint and because the parties have already engaged in "extensive discovery." (ECF No. 82, at 2). This argument is without merit. First, this Court granted Plaintiffs' request for leave to amend their complaint, despite Defendant's identical argument that it would be prejudiced by new allegations at this stage in the litigation. (*See* ECF No. 40, at 11). Plaintiffs cannot now reasonably argue that they would be prejudiced by Defendant's response to the new allegations in the amended complaint, which includes the instant request to add a third-party defendant for contribution purposes. Second, while it is true that the parties have already been engaged in discovery for a lengthy period of time, as this Court has already explained in this memorandum, discovery has been slow and will likely continue for some period of time.

**C.      Conclusion**

Here, ABB has demonstrated that, in accordance with Rule 14(a), it can assert a claim against the third-party defendant for contribution related to Plaintiffs' claims against ABB.  Because granting leave is a matter of judicial discretion and because the Court finds that joinder would serve the interests of justice and judicial economy, the Court will **GRANT** Defendant's motion to join a third party (ECF No. 72).

**VIII.   CONCLUSION**

For the reasons stated above, the Court will **GRANT** all four of the currently pending motions in this matter.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD KEPHART and DIANE KEPHART, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 2:12-668 |
| v. | ) ) | JUDGE KIM R. GIBSON |
| ABB, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 14th day of April, 2014, upon consideration of the motions currently pending in this matter (ECF Nos. 44, 49, 54, 72), and upon further consideration of the parties' accompanying briefs and submitted exhibits, and for the reasons explained in the foregoing memorandum,

**IT IS HEREBY ORDERED** that Plaintiffs' second motion to compel discovery (ECF No. 44) is **GRANTED**. Defendant shall produce all documents containing materials related to the factual investigation of the accident site within thirty (30) days after the date of this Order. Defendant may redact from those documents any mental impressions, conclusions, opinions, or legal theories of the Defendant's attorney in accordance with Rule 26(b)(3)(A)(i) and (ii).

**IT IS FURTHER ORDERED** that Defendant's motion to compel Plaintiffs' responses to lien interrogatories and requests for production of documents (ECF No. 49) is **GRANTED**. Plaintiffs shall serve their responses to Defendant's discovery requests within fourteen (14) days after the date of this Order.

**IT IS FURTHER ORDERED** that Defendant's motion to compel vocational examination (ECF No. 54) is **GRANTED**, and that Plaintiff Howard Kephart shall submit to a vocational examination within forty-five (45) days after the date of this Order.

**IT IS FURTHER ORDERED** that Defendant's motion for leave to join third-party defendants (ECF No. 72) is **GRANTED**. The joinder shall be made within thirty (30) days of the date of this Order.

**IT IS FURTHER ORDERED** that discovery in this matter shall be extended and that all fact discovery shall be completed within sixty (60) days after the joinder of the third-party defendants.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**