## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD KEPHART and DIANE KEPHART, | ) ) ) | Civil Action No. 2:12-668 |
| Plaintiffs, | ) ) | Judge Kim R. Gibson |
| v. | ) ) | |
| ABB, INC., | ) ) | |
| Defendant; Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE BABCOCK & WILCOX COMPANY, et al., | ) ) ) | |
| Third-Party Defendants | ) | |

## MEMORANDUM AND ORDER OF COURT

### I.     Synopsis

Before the Court in this matter are three motions:  (1) a motion to dismiss (ECF No. 94) filed by Third-Party Defendants Babcock & Wilcox Company, Babcock & Wilcox Investment Company, and Babcock & Wilcox Power Generation Group ("B & W" or "B & W Defendants"); (2) a motion for partial summary judgment (ECF No. 108) filed by Defendant/ Third-Party Plaintiff ABB, Inc. ("ABB"); and (3) a motion for consolidation of oral argument (ECF No. 111) filed by Defendant/ Third-Party Plaintiff ABB, Inc.  The primary issue argued by the parties is whether Pennsylvania's statute of repose, 42 Pa. Cons. Stat. § 5536, provides protection from liability in this action to Third-Party Defendants B & W and to Defendant ABB.  Based on the record before the Court and after

a careful review of Pennsylvania's statute of repose and the relevant case law, the Court finds that the statute of repose bars ABB's contribution claims against the B & W Defendants, but does not bar Plaintiffs' products liability and negligence claims against ABB. Accordingly, and for the reasons explained below, the Court will **GRANT** B & W's motion to dismiss and will **DENY** ABB's motion for partial summary judgment. Further, the Court will **DENY** ABB's motion for consolidation of oral argument.

## II. Jurisdiction and Venue

The Court exercises diversity jurisdiction over this removal action pursuant to 28 U.S.C. §§ 1332(a) and 1441. The Court has supplemental jurisdiction over the contribution claims in the third-party complaint pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b)(2).

## III. Background

### A. Factual Background

This case arises from personal injuries sustained by Plaintiff Howard Kephart ("Kephart") when a boiler exploded at the State Correctional Institute at Houtzdale ("SCI Houtzdale") where Kephart worked as a utility plant operator. (Am. Compl., ECF No. 57 ¶ 7). The following allegations are contained in Plaintiffs' amended complaint (ECF No. 57). In 1995, a dual-fuel boiler system was installed at SCI Houtzdale. (*Id.* ¶ 8). Also at this time, a Bailey Control Programmable Logic Controller System ("Controls System") was installed to provide automated control of the boilers. (*Id.*). The Controls System was

designed to display an error message in the event of a system error so that the boiler could be shut down, repaired, and restarted. (*Id.* ¶¶ 9-10).

On December 30, 2009, the Controls System displayed an error message for Boiler # 1, which was operating as an oil-fired boiler. (*Id.* ¶ 11-12). Workers shut down Boiler # 1, and a mechanic attempted to repair it. (*Id.* ¶¶ 11-16). After two attempts to relight Boiler # 1 and during a pre-ignition purge, the boiler exploded, causing injuries to Kephart. (*Id.* ¶ 17). Plaintiffs allege that the explosion resulted from the flooding of the boiler with fuel, which was caused by a "defect in the design and/or operation of the [Controls System]." (*Id.* ¶¶ 18-20). Plaintiffs further allege that Bailey Controls, Inc. designed and manufactured the Controls System, and that ABB is the successor to Bailey Controls, Inc., and is therefore liable. (*Id.* ¶¶ 3-4).

## B. Procedural History

Plaintiffs Howard and Diane Kephart initiated this action against ABB in the Court of Common Pleas of Allegheny County on April 18, 2012. (*See* ECF No. 1-2). The complaint alleged that ABB was liable, as the successor to Bailey Controls, for designing and manufacturing the defective Controls System, which caused the boiler to explode resulting in Kephart's injuries. The complaint asserted claims for strict products liability, negligence, and loss of consortium. After filing an answer on May 8, 2012, ABB removed the case to the United States District Court for the Western District of Pennsylvania, and the case was subsequently assigned to this Court. (*See* ECF Nos. 1, 6).

On December 30, 2013, with leave from the Court (*see* ECF No. 55), Plaintiffs filed an amended complaint (ECF No. 57); and on January 21, 2014, ABB filed an answer with affirmative defenses (ECF No. 65).  In the amended complaint, Plaintiffs added allegations that ABB was negligent in failing to properly "service, configure, and repair" the Controls System between 2007 and December 30, 2009.  (ECF No. 57 ¶ 21).

Thereafter, on April 24, 2014, with leave from the Court (*see* ECF No. 83), ABB filed a third-party complaint (ECF No. 84) against the B & W Defendants for contribution.  In response, the B & W Defendants filed the currently pending motion to dismiss (ECF No. 94) the third-party complaint, and the parties filed briefs (ECF Nos. 95, 97, 101, 113-1). The B & W Defendants contend that the statute of repose bars ABB's contribution claims.

On July 7, 2014, ABB filed a motion for partial summary judgment against Plaintiffs, along with a brief, a concise statement of material facts, and an appendix of exhibits.  (ECF Nos. 108, 109, 110).  ABB contends that it did not design the Controls System and, alternatively, that the statute of repose bars Plaintiffs' claims against ABB. Plaintiffs filed a response to the motion on August 6, 2014, along with a brief in opposition, a concise statement of material facts, and an appendix of exhibits.  (ECF Nos. 119, 120, 121, 122).  ABB then filed a brief in reply.  (ECF No. 126).

The parties have fully briefed the Court on the pending motions, which are now ripe for disposition.  The Court will separately address each motion below.

## IV.   B & W Defendants' Motion to Dismiss

### A.   Background

On April 24, 2014, ABB filed a third-party complaint for contribution (ECF No. 84) against the B & W Defendants.  The B & W Defendants have filed a motion (ECF No. 94) to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, the B & W Defendants contend that the third-party complaint fails to state a claim upon which relief may be granted because ABB's contribution claims are barred, as a matter of law, by Pennsylvania's statute of repose.  The B & W Defendants also contend that ABB has failed to attribute any tortious conduct to any of the individual B & W Defendants.  The parties have fully briefed the Court on these issues (ECF Nos. 95, 97, 101, and 113).

ABB alleges the following facts in the third-party complaint, which the Court will accept as true for evaluating the pending motion to dismiss.  The Kepharts' complaint in the original underlying action alleges that Bailey Controls defectively designed a Controls System, which provided automated control of the boiler system that was installed in 1995 at SCI-Houtzdale.  (ECF No. 84 ¶ 17).  The Kepharts' complaint also alleges that the Controls System's defects and deficiencies caused a boiler to explode on December 30, 2009, at SCI-Houtzdale, resulting in personal injuries to Mr. Kephart.  (Id. ¶ 19).  The third-party complaint, however, alleges that "Bailey Controls did not design the [Controls] System, as alleged by the Plaintiffs, but merely sold certain component parts that were chosen for the System by others."  (Id. ¶ 21).

Instead, ABB alleges, the Controls System and the boiler system were designed, manufactured, sold, programmed, and commissioned by B & W.  (*Id.* ¶ 22).  Specifically, B & W engineered and sold two FM103-97 saturated steam boilers to be used in the construction of SCI-Houtzdale; B & W supplied the boilers, burners, blowers, safety valves, controls, and coal micronizing equipment; and B & W provided the information that was used as a basis for the boiler specifications and the boiler arrangement drawings on the construction project.  (*Id.* ¶¶ 23-25).  B & W subcontracted with TCS to develop the control logic programming for the Controls System, among other things.  (*Id.* ¶¶ 28-30).  However, B & W was responsible for the selection of the Controls System's components, control logic, software programming, and overall design of the system; and B & W remained actively involved in overseeing, directing, monitoring, checking, and correcting the work of its subcontractor, TCS.  (*Id.* ¶¶ 33-34).

### B.    Motion to Dismiss Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted.  Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established.  *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See Fowler*, 578 F. 3d at 210. Second, the court must determine whether the factual matters averred are sufficient to show that a plaintiff has a "plausible claim for relief." *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id*. at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F. 3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a "context specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F. 3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997). If a complaint is

vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative

amendment, irrespective of whether a plaintiff seeks leave to amend, unless such

amendment would be inequitable or futile. *Phillips*, 515 F. 3d at 236; *see also Shane v.

Fauver*, 213 F. 3d 113, 115 (3d Cir. 2000).

## C.  Pennsylvania's Statute of Repose

The B & W Defendants contend that the third-party complaint should be

dismissed because Pennsylvania's statute of repose bars the contribution claims.  The

statute of repose provides in relevant part:

> [A] civil action or proceeding brought against any person lawfully
> performing or furnishing the design, planning, supervision or observation of
> construction, or construction of any improvement to real property must be
> commenced within 12 years after completion of construction of such
> improvement to recover damages for:
>
> (1) Any deficiency in the design, planning, supervision or observation of
> construction or construction of the improvement.
>
> (2) Injury to property, real or personal, arising out of any such
> deficiency.
>
> (3) Injury to the person or for wrongful death arising out of any such
> deficiency.
>
> (4) Contribution or indemnity for damages sustained on account of any
> injury mentioned in paragraph (2) or (3).

42 Pa. Cons. Stat. § 5536(a).  A statute of repose operates as substantive law by

extinguishing a cause of action outright and precluding its revival.  *Graver v. Foster

Wheeler Corp.*, 96 A. 3d 383, 387 (Pa. Super. 2014); *Luzadder v. Despatch Oven Co.*, 834 F. 2d

355, 358 (3d Cir. 1987).  A party moving for protection under the statute of repose must

show three elements:  (1) what is supplied is an improvement to real estate; (2) more than

12 years have elapsed between the completion of the improvements to the real estate and

8

the injury; and (3) the moving party is within the class protected by the statute. *McConnaughey v. Bldg. Components, Inc.*, 637 A. 2d 1331, 1333 (Pa. 1994); *McCormick v. Columbus Conveyer Co.*, 564 A. 2d 907 (Pa. 1989). The Court will separately address each of these three elements below.

### 1.     The boiler system is an improvement to real estate.

The Pennsylvania Supreme Court has defined an "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." *McCormick*, 564 A. 2d at 909 (quoting *Black's Law Dictionary* at 682 (5th ed. 1979)). "An improvement includes everything that permanently enhances the value of real property." *Noll by Noll v. Harrisburg Area YMCA*, 643 A. 2d 81, 87 (Pa. 1994); *Christ v. Prater Indus., Inc.*, 67 F. Supp. 2d 491, 494 (E.D. Pa. 1999).

Further, a fixture is an improvement to real property. *Noll*, 643 A. 2d at 87. The test used to determine whether an object constitutes a fixture has three components: (1) the relative permanence of the object's attachment to realty; (2) the extent to which the object is necessary or essential to the use of the realty; and (3) the intent of the parties to make a permanent addition to the realty. *Id.*; *see also Graver v. Foster Wheeler Corp.*, 96 A. 3d 383, 388 (Pa. Super. 2014). The Court must look to the objective intent of the parties, as evidenced by the facts and surrounding circumstances, to determine whether the parties intended to permanently incorporate the object into the real property. *Noll*, 643 A. 2d at

87; *Christ*, 67 F. Supp. 2d at 494. In making this objective determination, the Court may consider such factors as the degree and manner in which the object is attached to real property; the ease of removing the object; whether the object may be removed without damaging the real property; how long the object has been attached to the real property; whether the object is necessary or essential to the real property; and the conduct of the parties and whether they evidenced an intent to permanently attach the object to the realty. *Noll*, 643 A. 2d at 88; *Vargo v. Koppers Co., Eng'g & Const. Div.*, 715 A. 2d 423, 426 (Pa. 1998).

In the instant case, under the facts and circumstances presented, the boiler system is a fixture and constitutes an improvement to real property under the statute of repose. To begin, the boiler appears to be a permanent attachment to the real property. The record does not indicate whether or how the boiler system is affixed to the real property. In other words, it is unclear whether or not the boiler is bolted or cemented or permanently affixed in some other way to the prison structure. However, the furnace dimensions are 8 feet high, 6 feet wide, and 27 feet long, and the weight of the operating boiler is over 120,000 pounds. (ECF No. 97-4 at 29). The size of the boiler system suggests that it is permanently affixed to the real property. *See Beaver v. Dansk Industri Syndicat A/S (DISA)*, 838 F. Supp. 206, 211 (E.D. Pa. 1993) (explaining that a "qualitative examination of the machine's physical features shows that it is an improvement to real property" because of the machine's large size, stationary setting, and significant weight, among other factors). Also, it would be difficult to remove the system without causing damage to the prison, given its large size. *See Radvan v. Gen. Elec. Co.*, 576 A. 2d 396, 397 (Pa. Super.

1990) (concluding that a side trim machine was an improvement because, among other factors, its weight was in dozens of tons, and it would have been very difficult to dismantle or remove).

Similarly, there is no evidence that the boiler system has ever been moved since being installed. Likewise, the boiler system is comprised of various parts including micronizing equipment, control panels, burners, boilers, valves, a feedwater economizer, a baghouse, an ash storage silo, a dry lime injection system, fans, stacks, dearator, air compressors, pumps, pipes, flues, air compressors, and other components and subsystems. (ECF No. 97-3 at 51-52). Many of these components and subsystems are interconnected with each other and with the prison itself through pipes, ducts, and wires. *See Beaver*, 838 F. Supp. at 211 (explaining that a machine was a fixture when connected to conduit and hard piping for electric, water, and air utilities, and when other equipment had been built around the machine). These connections demonstrate that the boiler system cannot be moved and is an integrated part of the real property.

Next, the boiler system is necessary and essential to the use of the prison. The boiler system provides steam for the prison, which was designed to house about 1500 inmates. The steam generated by the boilers serves three basic functions at the prison— for laundry, for use in the kitchen, and for hot water heat exchangers, which provide heat for the facility and the domestic hot water supply. (*See* ECF No. 97-3 at 51).

Finally, after evaluating all of the factors enunciated in *Noll*, the Court finds that the parties objectively intended for the boiler system to become a part of the real property of the prison. Significantly, the Pennsylvania Superior Court, applying the same factors

above, recently concluded that a boiler system—very similar to the one here—constituted an improvement to real property under the statute of repose. *See Graver v. Foster Wheeler Corp.*, 96 A. 3d 383, 387 (Pa. Super. 2014). Thus, having applied the relevant factors, the Court finds that, under the facts and circumstances of this case, the boiler system is a fixture and constitutes an improvement to real property under the statute of repose.

### 2. More than 12 years have elapsed since completion of the boilers.

Next, under the statute of repose, an action to recover damages "must be commenced within 12 years after completion of construction" of an improvement to real property. 42 Pa. Cons. Stat. § 5536. Thus, the statute "bars claims filed 12 years after the completion of an improvement to real property." *Graver*, 96 A. 3d at 387 (explaining that statutes of repose begin to run upon the "completion of certain conduct by a defendant," rather than when a cause of action accrues like with a statute of limitations). Specifically, the twelve year period begins to run "when the entire construction project is so completed that it can be used by the general public." *Noll by Noll v. Harrisburg Area YMCA*, 643 A. 2d 81, 84 (Pa. 1994).

Construction of the boiler system at SCI-Houtzdale began in 1995 and was completed in 1996. (*See* ECF No. 57 ¶ 8, ECF No. 84 ¶ 17, ECF No. 84-4). Thus, under the statute, a claimant must have commenced any relevant claims by 2008. The boiler explosion causing Kephart's injuries occurred on December 30, 2009. Plaintiffs initiated their lawsuit in state court on December 14, 2011, fifteen years after the completion of the construction project and approximately three years after the expiration of the statute of

repose's 12-year period. Likewise, ABB did not file its third-party complaint seeking contribution from B & W until April 24, 2014, long after the expiration of the statute of repose period. Accordingly, because more than 12 years elapsed between completion of the boiler construction project and the asserted claims, this requirement of the statute of repose is satisfied.

### 3. B & W's activities are within the class protected by the statute.

Finally, to invoke the statute's protection from liability, the B & W Defendants must be within the class of persons protected by the statute. The statute applies to "any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property." 42 Pa. Cons. Stat. § 5536. In determining whether an entity is within the class of persons protected by the statute, the Court must focus its inquiry "on the activity performed, particularly whether any 'individual expertise' has been supplied." *Noll*, 643 A. 2d at 86 (citing *McConnaughey*, 637 A. 2d at 1334). "The Pennsylvania statute identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvement to the real property." *McCormick*, 564 A. 2d at 910 (quoting *Leach v. Philadelphia Sav. Fund Soc.*, 340 A. 2d 491, 493 (1975)). The statute applies "only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by builders." *McConnaughey*, 637 A. 2d at 1334.

Based on the allegations in ABB's third-party complaint, the B & W Defendants fall within the class of actors protected by the statute. Relevant here, ABB alleges the

following facts in the third-party complaint. "B & W engineered and sold two FM 103-97 saturated steam boilers . . . for the construction of the [boiler system project]." (ECF No. 85 ¶ 23). B & W "designed, manufactured, sold, programmed and commissioned" the boilers. (*Id.* ¶ 22). "B & W provided the information that was used as a basis for the boiler specification and the boiler arrangement drawings on the Project." (*Id.* ¶ 25). B & W subcontracted the development and installation of certain systems for the boiler system project to TCS, Inc., but "B & W was responsible for the selection of the System's components," and remained "actively involved in overseeing, directing, monitoring, checking and correcting the work of its subcontractor, TCS." (*Id.* ¶¶ 33-34).

ABB's allegations show that B & W performed its activities regarding the design, manufacturing, and installation of the boiler system with "individual expertise." Accordingly, the allegations in the third-party complaint demonstrate that the B & W Defendants are the "kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by builders." *McConnaughey v. Bldg. Components, Inc.*, 637 A. 2d 1331, 1334 (1994). Thus, this element of the statute is satisfied. Because all three elements are satisfied, the statute of repose bars ABB's contribution claims against the B & W Defendants.

In its brief in opposition to the motion to dismiss, ABB argues that B & W incorrectly focuses on the boiler system as a whole rather than the Controls System, and that the statute of repose does not apply to the Controls System. (ECF No. 97 at 15). ABB's argument is unavailing for a number of reasons. First, ABB's third-party complaint repeatedly alleges that B & W is liable in contribution because it designed, developed, and

implemented both the Controls System **and** the boiler system.  (*See, e.g.*, ECF No. 84 ¶¶ 42, 44, 45).  Indeed, the third-party complaint contains many allegations concerning B & W's design, development, and implementation of the boiler system.  (*Id.* ¶¶ 23-28).  Simply stated, ABB's third-party complaint clearly alleges that B & W's liability in contribution arises from its design, development, and implementation of the boiler system as a whole, and thus the statute of repose is a legitimate defense.

Furthermore, ABB alleges that the Controls System is an integrated component of the boiler system that was designed, developed, and implemented by B & W during the construction of the boiler system project.  Thus, even if ABB's allegations in its third-party complaint only address B & W's liability for its design and implementation of the Controls System, the statute of repose would still apply because the Controls System, as it pertains to B & W's activities, cannot be separated from the boiler system.  *See, e.g.*, *McCormick*, 564 A. 2d at 909 (finding that a conveyor belt coal delivery system was part of the improvement to real property and could not be separated as a "product" for statute of repose purposes); *McConnaughey*, 637 A. 2d at 1333 (explaining that defective roof trusses were incorporated into a barn and thus were an improvement to real property).  For these reasons, the statute of repose applies to B & W's activities in designing, developing, and implementing the boiler system, including the Controls System, and bars ABB's contribution claims.

Finally, ABB argues that B & W's negligent maintenance and service of the boiler system after the construction period ended is not within the scope of the statute of repose.  (*See* ECF No. 97 at 15).  ABB's argument is without merit.  "[A]n ongoing arrangement to

service and maintain an improvement does not extend the time in which suit can be maintained." *Facenda v. Applied Power, Inc.*, No. 87-cv-0980, 1987 WL 14151, at *3 (E.D. Pa. July 17, 1987); *see also Fetterhoff v. Fetterhoff*, 512 A. 2d 30, 33 (Pa. Super. 1986) (explaining that periodic service and maintenance of an improvement to real property by the builder does not enlarge the design and construction period beyond the twelve-year period of the statute of repose).

### D.     Conclusion

Because the statute of repose bars ABB's contribution claims against B & W, the B & W Defendants are entitled to dismissal, with prejudice, of the contribution claims against them as a matter of law.[1]  Further, the Court finds that amendment in this case would be futile because the statute acts as a complete bar to ABB's claims.  *See Noll by Noll v. Harrisburg Area YMCA*, 643 A. 2d 81, 84 (Pa. 1994) (explaining that statute of repose completely abolishes and eliminates the cause of action).

## V.     ABB's Motion for Partial Summary Judgment

### A.     Background

ABB has filed a motion (ECF No. 108) for partial summary judgment against Plaintiffs, arguing that it is entitled to partial summary judgment on Plaintiffs' defective design claims on two grounds.  First, ABB argues that it did not design the Controls

---

[1] Because the Court finds that the statute of repose bars ABB's contribution claims against the B & W Defendants, the Court will not address B & W's remaining argument that dismissal is proper because ABB failed to make any specific claims against any of the three B & W Defendants. (*See* ECF No. 95 at 14).

System.  Second, ABB argues that Plaintiffs' claims are barred by the statute of repose. The Court will separately address each argument below.

The following facts are not in dispute.  Plaintiffs sued ABB as the successor corporation to Bailey Controls, Inc.  (ECF No. 109 ¶¶ 1-2).  In their original complaint, Plaintiffs alleged that Bailey Controls "designed, developed, tested, assembled, manufactured, labeled, distributed, marketed, supplied and/or sold" the Controls System that was used to provide automated control of the boiler system that was installed in 1995 at SCI-Houtzdale.  (Id. ¶¶ 3-4).  Plaintiffs alleged that the Controls System was defective and that the defects caused Boiler # 1 to explode on December 30, 2009, resulting in personal injuries to Plaintiff Howard Kephart.  (Id. ¶¶ 3, 5).

Plaintiffs then filed an amended complaint on December 30, 2013, adding allegations that ABB performed defective service and repair work on the Controls System following completion of the boiler system.  (Id. ¶¶ 6-7).  ABB filed an answer denying that it had designed the Controls System and raising the statute of repose as an affirmative defense.  (Id. ¶ 9).  During discovery, ABB subpoenaed documents from the Babcock and Wilcox Company regarding information related to its involvement in the construction of the boiler system at SCI-Houtzdale.  (Id. ¶ 10).  ABB subsequently filed a third-party complaint against B & W for contribution.

B & W engineered and sold two FM103-97 saturated steam boilers for construction of the boiler system, and provided burners, boilers, soot blowers, safety valves, and coal micronizing equipment and controls.  (Id. ¶¶ 10-11).  B & W subcontracted with TCS, Inc., to supply micronizing equipment, a control panel, a burner management and combustion

control system, and other equipment. (*Id.* ¶ 11(e)). As part of the subcontract, TCS agreed to supply a personal computer station and a boiler control panel, which included a "controller sequence command Bailey Model CSC01," a "controller strategic loop Bailey Model SLC01," and a "modular bus extender Bailey Model CIC01." (*Id.* ¶ 11(f)). TCS was also responsible for developing the programming control logic for the boiler control panel. (*Id.* ¶ 11(g)).

### B. Summary Judgment Standard of Review

Summary judgment is appropriate only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F. 3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F. 3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F. 3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F. 3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F. 3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F. 3d 144, 148 (3d Cir. 1993).

## C. Discussion

### 1. ABB's liability for the design defects of the Controls System.

ABB argues that it is entitled to partial summary judgment on Plaintiffs' allegations that ABB is responsible for the defective design of the Controls System. (*See* ECF No. 110 at 4). ABB contends that it did not design the Controls System and had no design responsibility as alleged by Plaintiffs. (*Id.*). Instead, ABB asserts that B & W "designed and provided the Controls System and the boilers involved in the accident." (*Id.* at 5). To support this argument, ABB asserts that B & W "admitted that it designed the boilers and the Controls System," citing B & W's motion to dismiss and various project documents that were collected during discovery. (*Id.* at 4, 9). ABB contends that

19

"Bailey Controls merely manufactured some components of the Controls System that were selected, purchased, installed and programmed by others." (*Id.* at 10). Accordingly, ABB argues, ABB is entitled to partial summary judgment on "Plaintiffs' unfounded allegations that ABB bears responsibility for the Controls System." (*Id.*).

Despite these arguments, ABB has failed to satisfy its burden under the summary judgment standard. First, B & W never admitted to designing the components used in the Controls System. ABB improperly relies on B & W's brief in support of its motion to dismiss as proof that B & W designed the components of the Controls System. However, in deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. In its motion to dismiss, B & W acknowledged that ABB's allegations in the third-party complaint must be treated as if true for deciding the motion to dismiss, but B & W specifically "reserve[d] the right to later dispute any of the third-party complaint's allegations." (ECF No. 95 at 5 n.2). Thus, it would be improper for the Court to now construe B & W's argument in its motion to dismiss the third-party complaint as an admission that it designed the Controls System for deciding ABB's motion for summary judgment against the Plaintiffs.

Furthermore, ABB has not produced sufficient evidence showing that B & W—and not ABB or Bailey Controls—manufactured various components of the Controls System. Indeed, a review of the record shows that Bailey Controls did in fact design at least some components of the Controls System. ABB concedes this fact in its brief and in the third-party complaint: "Bailey Controls merely manufactured some components of the

Controls System that were selected, purchased, installed and programmed by others." (ECF No. 110 at 10). Importantly, ABB admits that some of the components used by B & W included a "controller sequence command Bailey Model CSC01," a "controller strategic loop Bailey Model SLC01," and a "modular bus extender Bailey Model CIC01," all manufactured by Bailey Controls. (Id. ¶ 11(f)).

Contrary to ABB's arguments, these concessions are precisely what form the basis of Plaintiffs' products liability claim: that Bailey Controls defectively designed and manufactured certain components—including, but not limited to, the firmware and operating system—used in the boiler's Controls System, and that the defective design of those components caused the Controls System to malfunction, resulting in the boiler's explosion. Plaintiffs do not allege that the boiler system as a whole was faulty, but only that certain critical components of the Controls System, designed and manufactured by Bailey Controls, were defective, causing the boiler to malfunction and explode.

In sum, ABB has failed to produce sufficient evidence that B & W, and not Bailey Controls, defectively designed the malfunctioning components. To the contrary, Plaintiffs have produced, among other things, an affidavit from an expert explaining that Bailey Controls provided the operating system program and the firmware for the Controls System and that the firmware provided by Bailey Controls did not automatically shut down the boiler, even though it should have had it been properly functioning. (ECF No. 121-2 ¶¶ 4-5). Thus, a dispute of material fact exists as to whether ABB is liable for designing and manufacturing any defective components used in the Controls System resulting in the explosion of the boiler. Accordingly, viewing the facts in the light most

favorable to Plaintiffs, the Court finds that a genuine dispute of a material fact remains, and summary judgment is therefore not proper at this time.

### 2. Pennsylvania's statute of repose is inapplicable to ABB.

In the alternative, ABB argues that, if the Court grants B & W's motion to dismiss based on the statute of repose, then the statute of repose also applies to ABB. (*See* ECF No. 110 at 4). However, unlike B & W, ABB is not within the class protected by the statute.[2]

As a general rule, manufacturers are not included in the class protected by the statute of repose at issue here. *Noll by Noll v. Harrisburg Area YMCA*, 643 A. 2d 81, 86 (Pa. 1994). "[A] manufacturer who does nothing other than supply a defective product which later is incorporated into an improvement to real property by others is not within the purview of the statute. . . . The Pennsylvania statute of repose was not intended to apply to manufacturers and suppliers of products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by builders." *McConnaughey v. Bldg. Components, Inc.*, 637 A. 2d 1331, 1334 (Pa. 1994); *see also Luzadder v. Despatch Oven Co.*, 834 F. 2d 355, 359 (3d Cir. 1987) (explaining that "[a]pplication of § 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property"). "The mere fact that a party manufactures a product, however, will not automatically remove it from the

---

[2] Because the Court finds that ABB fails to satisfy this element of the test under the statute of repose, the Court will not address the remaining two elements.

statute's protection; rather, the proper focus is on the activity performed, 'particularly, whether any "individual expertise" has been supplied.'" *Freeman v. Paco Corp.*, No. 99-cv-5906, 2000 WL 709481, at *4 (E.D. Pa. June 1, 2000) (quoting *Noll*, 643 A. 2d at 86).

Thus, this Court must determine whether ABB, as a manufacturer, "supplied 'individual expertise' to the design of an improvement" and that such contribution or acts were "done in relation to the improvement of real property." *Noll*, 643 A. 2d at 86 (citing *McConnaughey*, 637 A. 2d at 1334). In other words, the Court must evaluate whether ABB, as the manufacturer of components used in the Controls System, did more than merely provide a product, and instead expended "individual expertise" regarding the integration of the Controls System into the boiler system, which was the improvement to real property. *See Noll*, 643 A. 2d at 86-87. But, "one who merely supplies a component part in the construction of an improvement to real estate is not entitled to the protection of the statute of repose." *Rabatin v. Allied Glove Corp.*, 24 A. 3d 388, 394 (Pa. Super. 2011); *see also Ferricks v. Ryan Homes, Inc.*, 578 A. 2d 441, 445 (Pa. Super. 1990) (concluding that the manufacturer of a product with distinct purposes, only one of which is used as a component in the construction an improvement on real estate, is not entitled to the protection of the statute of repose).

ABB has consistently argued that "B & W, not ABB, was responsible for the design, programming, and installation of the Controls System . . . [and t]here is no evidence that ABB . . . was anything other than a mere manufacturer of some components of the Controls System." (ECF No. 110 at 12). In arguing that B & W was responsible for the design and installation of the Controls System as part of the boiler construction

project, and that ABB was only a "mere manufacturer" of some components used in the project, ABB has failed to show that it is within the class protected by the statute.

In sum, Plaintiffs have asserted a products liability claim and a negligence claim against ABB for defectively designing and negligently servicing and repairing critical components of the Controls System. ABB concedes that it, as the successor to Bailey Controls, designed and manufactured certain components used in the Controls System. However, ABB has failed to present any evidence that it provided the type of "individual expertise" regarding its conduct in relationship to the construction of the boiler system, which is the improvement to real property at issue. As such, ABB simply does not qualify as an actor within the class of persons protected by the statute and is not entitled to the statutory protection afforded by Pennsylvania's statute of repose.

D.     Conclusion

Construing the facts and evidence in the light most favorable to Plaintiffs, the Court finds that a genuine dispute of material fact exists as to whether ABB is liable for the defectively designed components used in the Controls System. Furthermore, because ABB was a "mere manufacturer" of components used in the Controls System, ABB does not fall within the class protected by the statute of repose, and the statute of repose therefore does not bar Plaintiffs' claims against ABB. Accordingly, the Court will deny ABB's motion for summary judgment.

## VI.     ABB, Inc.'s Motion for Consolidation of Oral Argument

On June 27, 2014, counsel for ABB requested oral argument on B & W's motion to dismiss, and the Court scheduled argument for July 9, 2014.  (*See* ECF No. 103).  On July 7, 2014, after filing its motion for partial summary judgment, ABB filed a motion (ECF No. 111) asking the Court to cancel the scheduled oral argument and to reschedule a consolidated oral argument on both the motion to dismiss and the motion for partial summary judgment.  The Court cancelled the scheduled oral argument, explaining that the Court would revisit the request for oral argument at a later time, after the parties had an opportunity to fully brief the Court on the pending motions.  (*See* ECF No. 112).  The B & W Defendants then filed a response in opposition to the motion for consolidated oral argument, arguing, among other things, that oral argument was unnecessary given the briefs and supplemental authority submitted by the parties.  (*See* ECF No. 115).  The Court has carefully reviewed all of the motions, briefs, and exhibits filed by the parties related to the matters now pending before the Court.  In light of the Court's decision regarding B & W's motion to dismiss and ABB's motion for partial summary judgment, the Court will deny ABB's motion for consolidated oral argument as moot.

## VII.   Conclusion

Having carefully reviewed the record, the Court will **GRANT** B & W's motion to dismiss the third party complaint, with prejudice; the Court will **DENY** ABB's motion for partial summary judgment; and the Court will **DENY** ABB's motion for consolidation of oral argument as moot.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HOWARD KEPHART and DIANE** ) | |
| **KEPHART,** ) | **Civil Action No. 2:12-668** |
| ) | |
| **Plaintiffs,** ) | **Judge Kim R. Gibson** |
| ) | |
| **v.** ) | |
| ) | |
| **ABB, INC.,** ) | |
| ) | |
| **Defendant; Third-Party** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE BABCOCK & WILCOX** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| **Third-Party Defendants** ) | |

### ORDER

AND NOW, this **18th** day of March 2015, upon consideration of the motions pending before the Court, and in further consideration of the accompanying briefs and exhibits, and for the reasons explained in the attached memorandum, **IT IS HEREBY ORDERED** as follows:

(1) The motion to dismiss (ECF No. 94) filed by Third-Party Defendants Babcock & Wilcox Company, Babcock and Wilcox Investment Company, and Babcock & Wilcox Power Generation Group, Inc. is **GRANTED**; and the third-party complaint (ECF No. 84) is **DISMISSED, with prejudice**.

(2) The motion for partial summary judgment (ECF No. 108) filed by Defendant/ Third-Party Plaintiff ABB, Inc. is **DENIED**.

(3) The motion for consolidation of oral argument (ECF No. 111) filed by

Defendant/ Third-Party Plaintiff ABB, Inc. is **DENIED as moot**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**